**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| TED SIGMON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>URBAN EDGE PROPERTIES; and URBAN EDGE PROPERTIES LP,<br><br>Defendants. | Case No. 2:18-cv-01354-DCN |

**NATIONWIDE CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff Ted Sigmon, on behalf of himself and all others similarly situated, and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action individually and on behalf of all others similarly situated against Urban Edge Properties and Urban Edge Properties LP ("Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities").

2. Plaintiff has a mobility disability and is limited in the major life activity of walking, which has caused him to be dependent upon a wheelchair for mobility.

3. Plaintiff has visited Defendants' facilities and was denied full and equal access as a result of Defendants' inaccessible parking lots and paths of travel.

4. Plaintiff's experiences are not isolated—Defendants have systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendants' facilities.

5. In fact, numerous facilities owned, controlled, and/or operated by Defendants have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendants employ with regard to the design, construction, alteration, maintenance, and operation of its facilities causes access barriers and/or allows them to develop and persist at Defendants' facilities.

6. Unless Defendants are required to remove the access barriers described below, and required to change their policies and practices so that access barriers do not reoccur at Defendants' facilities, Plaintiff and the proposed Class will continue to be denied full and equal access to those facilities as described and will be deterred from fully using Defendants' facilities.

7. The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . . .

42 U.S.C. § 12188(a)(2).

8. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendants remediate all parking and path of travel access barriers at Defendants' facilities, consistent with the ADA;

   b. Defendants change their policies and practices so that the parking and path of travel access barriers at Defendants' facilities do not reoccur; and

    c.  Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 8.a. and 8.b. has been implemented and will remain in place.

9.    Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

10.    The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

11.    The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

12.    Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with

disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

13. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

14. Title III and its implementing regulations define discrimination to include the following:

   a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

   b) Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

   c) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

   d) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

15. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

16. The ADA also provides for specific injunctive relief, which includes the following:

In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include . . . modification of a policy . . . to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## THE REAL ESTATE INVESTMENT TRUST

17. A real estate investment trust ("REIT") is a corporation, trust, or association that owns and operates income-producing real estate in a variety of property sectors and meets the requirements of 26 U.S.C. § 856.

18. REITs receive preferential tax treatment on dividends paid to shareholders and function essentially as pass-through tax entities.

19. To maintain their preferred tax status, REITs are subject to certain statutory limitations on the kinds of activities they may conduct.

20. Because a REIT's activities are limited, a REIT is permitted to own 100% of the stock in a Taxable REIT Subsidiary ("TRS"), which have more operational flexibility.

21. A TRS typically provides services to the parent REIT's tenants or owns or operates property that would otherwise disqualify the REIT from its nontaxable status.

22. The only statutory restrictions concerning the activities of a TRS relate to lodging and healthcare facilities. *See* I.R.C. § 856(l)(3). Otherwise, a TRS is able to provide a wide range of services such as, *inter alia*, property management, construction services, and operating parking facilities.

23. In addition to the use of TRS entities, REITs commonly structure their organization through a variety of operating partnerships to segment their property ownership interests. For example, an umbrella partnership real estate investment trust ("UPREIT") is a REIT that holds substantially all of its properties through a partnership of which it is a partner. In the UPREIT structure, the REIT is treated as indirectly owning real estate assets. The operating partnerships, in turn, have a direct ownership interest in the REIT's properties.

24.     Defendant Urban Edge Properties is a publicly-traded REIT that, through its subsidiaries and affiliates, owns, manages, leases, and develops shopping centers, malls, and other retail properties throughout the United States.[1]

25.     Defendants, on information and belief, conduct their operations through at least one TRS entity. *Id.* at 3.

26.     Defendants own and operate a property portfolio of public accommodations that consists primarily of "85 shopping centers [and] four malls". *Id.* at 1.

27.     Defendants are aware of their obligations under the ADA with respect to their properties: "We [Urban Edge Properties] could be required under the ADA to make substantial alterations to, and capital expenditures at, one or more of our properties, including the removal of access barriers." *Id.* at 10.

28.     On information and belief, Defendants own the properties where Plaintiff was denied full and equal access as a result of inaccessible parking lots and paths of travel.

29.     Plaintiff intends to propound discovery that will demonstrate that these properties are under the direct control and management of Defendants.

## JURISDICTION AND VENUE

30.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

31.     Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

---

[1] Urban Edge Properties, Annual Report (Form 10-K), at 1 (Feb. 14, 2018), available at https://www.sec.gov/Archives/edgar/data/1611547/000161154718000009/ue-12312017x10k.htm as of May 17, 2018.

32. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

33. Plaintiff is, and at all times relevant hereto was, a resident of South Carolina. As described above, as a result of his disability, Plaintiff relies upon a wheelchair for mobility. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

34. Defendant Urban Edge Properties is a REIT organized under Maryland law and headquartered at 888 Seventh Avenue, New York, NY 10106.

35. Defendant Urban Edge Properties LP is a Delaware limited partnership headquartered, on information and belief, at 888 Seventh Avenue, New York, NY 10106.

36. Defendants are a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

**I.    Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities.**

37. Plaintiff has visited Defendants' facilities located at 1987 Sam Rittenberg Blvd., Charleston, SC, including within the last year, where he experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and other ADA accessibility violations as set forth in more detail below.

38. Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities, as he regularly travels in and around the area where Defendants' facilities are located, usually to have his car serviced nearby, and he wishes to access goods and services offered at Defendants' facilities. Furthermore, Plaintiff intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of the ADA.

39. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded.

40. Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities, however, so long as Defendants' facilities remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendants' facilities.

41. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities in violation of his rights under the ADA.

42. As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' facilities, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II. Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to Defendants' Facilities.

43. Defendants are engaged in the ownership, management, and development of retail properties, primarily malls and shopping centers, throughout the United States.

44. As the owner and manager of their properties, Defendants employ centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of their facilities.

45. To date, Defendants' centralized design, construction, alteration, maintenance, and operational policies and practices have systematically and routinely violated the ADA by designing, constructing, and altering facilities so that they are not readily accessible and are usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendants' facilities are maintained.

46. On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendants and found the following violations, which are illustrative of the fact that Defendants implement policies and practices that routinely result in accessibility violations:

  a. 1987 Sam Rittenberg Blvd., Charleston, SC

     i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

     ii. One or more purportedly accessible access aisles measured less than 60 inches.

  b. 500 Route 38, Cherry Hill, NJ

     i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

     ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

  c. 641 Baltimore Pike, Springfield, PA

     i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

     ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

     iii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

     iv. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area.

  d. 50 N. Macdade Blvd., Glenolden, PA

     i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

     ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

     iii. One or more purportedly accessible spaces were not marked with required signs; and

     iv. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

    e. 2325 Street Road, Ben Salem, PA

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

47. The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendants' facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendants' systemic disregard for the rights of individuals with disabilities.

48. Defendants' systemic access violations demonstrate that Defendants either employ policies and practices that fail to design, construct, and alter their facilities so that they are readily accessible and usable and/or that Defendants employ maintenance and operational policies and practices that are unable to maintain accessibility.

49. As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' corporate policies and practices, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated.

50. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, inaccessibility to affect Defendants' network of facilities.

## **CLASS ALLEGATIONS**

51. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class: all wheelchair users who have attempted, or will attempt, to utilize the parking facilities at all locations within the United States for which Defendants own and/or control the parking facilities.

52. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

53. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

54. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

55. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

56. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

**SUBSTANTIVE VIOLATION**

57. The allegations contained in the previous paragraphs are incorporated by reference.

58. Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

59. Defendants' facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C. § 12183(a).

60. Further, the accessible features of Defendants' facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 C.F.R. § 36.211.

61. The architectural barriers described above demonstrate that Defendants' facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs and/or that Defendants' facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

62. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

63. Defendants' repeated and systemic failures to design, construct, and alter their facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

64. Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

65.     Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of their facilities.  42 U.S.C. § 12182(a).

66.     Defendants have failed, and continue to fail, to provide individuals who use wheelchairs with full and equal enjoyment of their facilities.

67.     Defendants have discriminated against Plaintiff and the class in that they have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

68.     Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

69.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

70.     Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a.  A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing

      regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to change their policies and practices to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.    An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.    The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated:  May 17, 2018                    Respectfully Submitted,


                                                    *s/ James L. Ward, Jr.*
                                                   James L. Ward, Jr.
                                                   Fed. ID No. 6956
                                                   **MCGOWAN HOOD & FELDER, LLC**
                                                   321 Wingo Way, Suite 103
                                                   Mt. Pleasant, SC 29464
                                                   Phone: 843-388-7202
                                                   Fax: 843-388-3194
                                                   jward@mcgowanhood.com

                                                   Gregory A. DeLuca
                                                   Fed. ID No. 7748
                                                 **DeLUCA MAUCHER, L.L.P.**
                                                   113 Broughton Road
                                                   Moncks Corner, SC 29461
                                                   Phone: 843-899-7877
                                                   Fax: 843-899-7687
                                                   greg@delucamaucher.com

Benjamin J. Sweet*
Edwin J. Kilpela, Jr.*
Elizabeth Pollock-Avery*
Bryan Fox*
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: 412-322-9243
Fax: 412-231-0246
bsweet@carlsonlynch.com
ekilpela@carlsonlynch.com
eavery@carlsonlynch.com
bfox@carlsonlynch.com

*Counsel for Plaintiff and the Class*

*pro hac vice application forthcoming*